UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VINCENT E. VICARI,

       Plaintiff,    **MEMORANDUM AND ORDER**

  - against -       1:05-cv-4967-ENV-VVP

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.
-------------------------------------------------------------X

**VITALIANO, D.J.**

  Plaintiff Vincent E. Vicari seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under the Social Security Act (the "Act"). The parties agree that the administrative law judge's ("ALJ") decision denying Vicari benefits contains multiple legal errors and cannot be affirmed. They disagree, however, as to the matter's ultimate disposition. On the one side, the Commissioner argues that the record before the Court does not compel a conclusion that plaintiff was disabled and urges the Court to remand for further proceedings and analysis before the ALJ. On the other, Vicari argues that substantial evidence supports a finding of disability and asks the Court to remand solely for the purpose of calculating benefits. For the reasons that follow, the Court is constrained to remand this matter for further proceedings, to be held before a new ALJ and to be resolved expeditiously.

---

[1] Michael J. Astrue, the current Commissioner of Social Security, took office on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted as the defendant in this action.

I.  **BACKGROUND**

On January 4, 2000, Vincent Vicari filed an application for disability insurance benefits, alleging that he was disabled as of March 31, 1997, his date last insured ("DLI"). Mr. Vicari claims that he suffered from serious injuries to his neck and spine, resulting from a March 26, 1997 workplace injury, and from severe psychiatric impairments, including depression and panic attacks, with which he has been burdened since as early as 1987.[2]

The Social Security Administration ("SSA") denied plaintiff's application initially, on March 29, 2000, and on reconsideration, on May 8, 2000. Mr. Vicari then requested a hearing, which was held before ALJ Manuel Cofresi on April 3, 2001, and at which plaintiff testified. In a May 17, 2001 decision, the ALJ determined that plaintiff was not disabled, and the Appeals Council denied Mr. Vicari's request for a review of the decision. Plaintiff commenced an action in this Court (docketed as No. 01-CV-7768) to review the ALJ's decision. In a July 3, 2002 Order (per Amon, J.), the Court remanded the case for further proceedings. The Appeals Council subsequently vacated the administrative decision and ordered the ALJ on remand to obtain additional records from a treating physician, Dr. Jeffrey Schwartz, reconsider the medical evidence, provide Mr. Vicari the opportunity to appear at a new hearing, and issue a new decision.

ALJ Cofresi scheduled a new hearing for March 19, 2003. Plaintiff's counsel provided the ALJ with a letter from Mr. Vicari's treating psychiatrist, Dr. Louis Capello, which stated that plaintiff could not attend the hearing because of his mental health issues. At the hearing, the ALJ dismissively rejected Dr. Capello's explanation for plaintiff's absence and issued a Notice to Show Cause for Failure to Appear. Plaintiff responded to the

---

[2] The physical injuries sustained by Mr. Vicari constitute "exertional" limitations on his ability to do work, while the mental health issues he confronts constitute "non-exertional" impairments. Impairments of either stripe, or those that result from a combination of the two, may be sufficient to satisfy a finding of disability.

2

Notice on April 8, 2003 with a letter explaining that he could not attend the hearing because of his psychiatric condition and requesting the opportunity to testify by telephone. On May 1, 2003, ALJ Cofresi determined that Mr. Vicari failed to establish a good reason for his earlier absence and dismissed his case. Plaintiff requested a review of this decision, and on October 22, 2003, the Appeals Council again reversed the ALJ's dismissal and remanded. In its new decision, the Appeals Council observed that its earlier remand order remained in effect and reiterated that in arriving at a new decision, the ALJ was required to request additional records from Dr. Schwartz, reconsider the medical evidence on the record, and provide Mr. Vicari the opportunity to appear at a new hearing.

On remand, Mr. Vicari's case was assigned to a new ALJ, Sol Wieseltheir. ALJ Wieseltheir held a hearing on February 10, 2004, which Mr. Vicari did not attend, again, as a consequence of his psychiatric condition. In noting plaintiff's absence, the ALJ observed that "[t]here's no use talking on the phone to him I don't think we'll get anything different, but I will give [plaintiff's counsel] the opportunity now as you requested . . . to make a statement, which I'm sure gladly that you make [sic], there's no problem." (R. at 299.) Six months after the hearing, the ALJ requested the assistance of a non-treating, non-examining physician, Dr. Gene Gitelle, to evaluate the record and to provide a medical opinion about Mr. Vicari's condition. The following year, on August 24, 2005, ALJ Wieseltheir issued a decision evaluating plaintiff's application for benefits *de novo* and determining that Mr. Vicari was not disabled as of his DLI. This was the final act of the Commissioner. On October 24, 2005, plaintiff initiated this action to overturn the ALJ's decision and to secure a finding of disability that would entitle him to the benefits he seeks.

## II. DISCUSSION

### A. Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify that decision, "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004) ("Butts I"). However, this power of review is not unbounded. When evaluating a determination by the Commissioner to deny a claimant disability benefits, the Court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Courts are advised to "keep[] in mind that it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). When evaluating the evidence, "the court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

### B. Standards for Entitlement to Benefits

To be eligible for disability benefits, a claimant must establish that he was disabled within the meaning of the Act prior to the expiration of his insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c). The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. See, e.g., Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits his work-related activities. 20 C.F.R. §

404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the residual functional capacity to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant cannot perform his past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v).

The claimant bears the burden of proof as to the first four steps. See, e.g., Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). If the claimant proves that his impairment prevents him from performing past relevant work, the burden shifts to the Commissioner at the final step. Id.

## C. Legal Errors in the August 24, 2005 Decision

The parties agree that the ALJ's August 24, 2005 opinion denying Mr. Vicari benefits is infected by multiple errors of law that, at minimum, require the Court to vacate that decision. First, with respect to the second step of the sequential analysis, the ALJ improperly determined that Mr. Vicari's alleged impairments were not severe. (R. at 266-67.) This conclusion plainly is at odds with established precedent that the severity prong is intended as a *de minimis* standard to screen out only those claimants with "slight" limitations that "do not significantly limit any basic work activity." Bowen v. Yuckert, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring, joined by Stevens, J.); Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) ("the severity regulation is valid only if applied to screen out *de minimus* claims"). The parties agree that Mr. Vicari's impairments satisfy this standard.[3]

---

[3] Plaintiff argues that both his physical and psychological impairments qualify as severe under the second prong. The Commissioner agrees with respect to Mr. Vicari's psychological impairments and does not

5

Second, the ALJ failed to give appropriate weight to Mr. Vicari's medical evidence, or to provide good reasons for rejecting that evidence, if he determined to do so. See 20 C.F.R. § 404.1527(d)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). To establish his disability claim based on his psychological impairments, plaintiff relies on medical evidence and opinion from two doctors, Dr. Victor Rudy and Dr. Louis Capello, who treated him for his conditions after the alleged onset of his disability. In his decision, the ALJ entirely disregarded this evidence, noting, erroneously, that "a retrospective opinion is not acceptable dispite [sic] the attorneys [sic] allegations to the contrary." (R. at 266.) The Commissioner concedes that Drs. Rudy and Capello specifically opined about plaintiff's psychological condition during the relevant time period -- each concluding that Mr. Vicari was disabled prior to his DLI -- and that the ALJ was without authority to reject these opinions. See, e.g., Shaw, 221 F.3d at 134; see also Miller v. Astrue, No. 03-CV-2072, 2008 WL 2540750, at *9 (S.D.N.Y. June 23, 2008). Likewise, plaintiff argues, and the Commissioner does not contest, that the ALJ's summary dismissal of the opinion of Dr. Schwartz (R. at 266), one of Mr. Vicari's treating physicians for his physical impairments, and his failure altogether to discuss the findings of other treating or consulting doctors who opined about his physical limitations, was legal error. The Court agrees and concludes that these mistakes of law mandate that the ALJ's decision be vacated. See Shaw, 221 F.3d at 134; Snell, 177 F.3d at 133; Sutherland v. Barnhart, 322 F. Supp. 2d 282, 290-91 (E.D.N.Y. 2004).

---

address in any way the severity question with respect to his physical condition. The Court thus concludes, in the absence of any evidence or argument to the contrary, that Mr. Vicari's physical impairment satisfies this *de minimis* standard, as well.

6

### D. Disposition

As already noted, the Court is empowered to reverse a decision of the Commissioner "with or without remanding the cause for a rehearing." Butts I, 388 F.3d at 385 (quoting 42 U.S.C. § 405(g)). Whether it is appropriate for a district court to reverse a finding of non-disability and remand solely for the calculation of benefits, as plaintiff requests the Court do here, is another matter. Remand for calculation of benefits should occur only "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Pratts v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); Rosa, 168 F.3d at 83. However, "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence." Rosa, 168 F.3d at 82-83. This course of action is wiser under such circumstances because, "[w]here there is conflicting evidence on the issue of disability, 'it is for the [SSA], and not this court, to weigh the conflicting evidence in the record, particularly when the court 'cannot say with certainty what weight should be assigned . . . to the opinion of plaintiff's treating physician." Heath v. Astrue, No. 07-CV-1238, 2008 WL 1850649, at *2 (E.D.N.Y. Apr. 24, 2008) (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)); Kirkland v. Astrue, No. 06-CV-4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (remand for further proceedings is "particularly appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of a claim").

Remand for further proceedings is the appropriate course here. The parties agree that the ALJ applied improper legal standards in evaluating the claim, an error that included

both giving short shrift -- to put it mildly -- to several of Mr. Vicari's treating physicians and failing altogether to consider the rest of the medical record evidence plaintiff put before him. A remand for additional proceedings will enable an ALJ to consider fully, as he must, this potentially controlling evidence. Lopez v. Sec'y of Health & Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984) (remand for further proceedings is the proper remedy "when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him"); Sutherland, 322 F. Supp. 2d at 289 ("[i]t is grounds for a remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim").

Moreover, while plaintiff strongly argues that the record, as developed, compels the conclusion that he was disabled as of his DLI, there exists at least some evidence to the contrary. For example, while Mr. Vicari relies heavily on the favorable findings of his treating physicians, the Commissioner argues against giving great weight to the opinions of Dr. Schwartz and Dr. Rudy because of alleged inconsistencies between their conclusions and other evidence in the record.[4] Moreover, the Commissioner asserts that the rest of plaintiff's medical evidence is only minimally probative because it follows in time -- and reflects -- an intervening automobile accident suffered by plaintiff after his DLI.[5] In lieu of these sources, the Commissioner urges that weight be given to the expert opinion of Dr. Gitelle -- a doctor consulted by the ALJ for his expert opinion but who neither treated nor

---

[4] For example, as to Dr. Schwartz, the Commissioner questions whether the doctor's subsequent finding that plaintiff was disabled by his March 26, 1997 injury is consistent with his treating records from the time of the injury. As to Dr. Rudy, the Commissioner notes, *inter alia*, that the doctor's opinion that Mr. Vicari was "totally disabled" between 1987 and 1997 (R. at 226) may not square with the alleged fact that plaintiff held full-time jobs during that period.

[5] In this vein, the Commissioner argues, *inter alia*, that record evidence from Dr. Anthony Sparato, an orthopedic surgeon who treated plaintiff in August and October of 2002, indicates that the physician believed that the "precipitating facto[r] leading to plaintiff's pain was the March 1999 auto accident." (Def.'s Reply Mem. at 4.) However, it appears from an examination of the portion of the record cited by the Commissioner that Dr. Sparato attributed the onset of plaintiff's physical pain to an "accident 3/97" -- a notation that would seem to reflect not the auto accident but rather Mr. Vicari's March 1997 workplace accident that triggered the onset of his physical impairment and which occurred prior to his DLI. (R. at 345.) The confusion over the meaning of this item of record evidence should be resolved on remand.

8

examined Mr. Vicari -- who concluded that plaintiff was not disabled. Though the Court is sympathetic to Mr. Vicari's arguments, it is for the SSA, and not the Court, to weigh these disputed facts. Schaal, 134 F.3d at 504. As Judge Block noted in a recent decision not unlike the one at bar: "[i]n light of the conflicting record evidence, the Court cannot preempt the Commissioner by making a finding of disability. . . . [N]otwithstanding the ALJ's errors, it simply cannot be said that the evidence of record so clearly points to a [physically or psychologically] disabling condition as to justify a judicially mandated award of benefits." Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *4 (E.D.N.Y. June 17, 2008).[6]

E. **Conditions of Remand**

Having concluded that the action must be remanded for further proceedings, the litigation history here requires that the remand be guided by specific directions.

Consistent with this opinion, and its acknowledgment that plaintiff has satisfied the severity requirement of the second prong of the sequential analysis, the ALJ will begin to evaluate Mr. Vicari's claim at the third step. More importantly, when deciding the remaining steps, the ALJ must consider the entirety of the medical evidence available in the record. See, e.g., Sutherland, 322 F. Supp. 2d at 289. The ALJ must then evaluate the medical opinions of Mr. Vicari's treating physicians, specifically including but not limited to Drs. Schwartz, Rudy, and Capello, in light of the treating physician rule. If the opinions of these physicians are determined to be well-supported by medically acceptable clinical and

---

[6] Notwithstanding the lengthy and unfortunate delay Mr. Vicari has experienced waiting for his claim to be fully adjudicated, he has not -- yet -- persuaded an ALJ on the four steps of the sequential test for which he bears the burden of proof. Thus, the posture of his case stands in contrast to those on which he relies in seeking to avoid a remand for further proceedings. See, e.g., Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638 (2d Cir. 1983) (remanding for benefits calculation where "the reversal is based solely on the Secretary's failure to sustain his burden" on the fifth prong); Curry v. Apfel, 209 F.3d 117 (2d Cir. 2000) (same); Balsamo, 142 F.3d 75 (same).

laboratory diagnostic techniques and are not inconsistent with other substantial evidence, they must be given controlling weight. 20 C.F.R. § 404.1527(d); Shaw, 221 F.3d at 134. If the ALJ determines, after an analysis that includes "good reasons" explained on the record, that a treating physician's opinion should not be afforded controlling weight, he must apply the factors found in 20 C.F.R. §§ 404.1527(d)(2)-(6) to decide how much weight that opinion should be given. See, e.g., Shaw, 221 F.3d at 134. Under no circumstances may the ALJ disregard the opinions of Mr. Vicari's treating physicians simply because they were offered retrospectively. See, e.g., Miller, 2008 WL 2540750, at *9 (noting that it is "well-settled that the 'treating physician rule' applies to retrospective diagnoses"). Moreover, with respect to the opinion of Dr. Gitelle, the ALJ must weigh his opinions keeping in mind both that a medical advisor's opinion does not outweigh that of a treating physician and that "[g]enerally, [the Commissioner will] give more weight to opinions from . . . treating sources, since these sources . . . may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(d)(2); see also Harnisher v. Apfel, 40 F. Supp. 2d 121, 128 (E.D.N.Y. 1999).

Plaintiff argues that the Commissioner has acted in bad faith by twice denying him his "right to testify by telephone." (Pl.'s Reply Mem. at 3.) The Court appreciates Mr. Vicari's frustration at the difficulties he has encountered in prosecuting his claim. However, he cites no authority for the right he asserts, and the Court has found none. "To the contrary, the regulations make clear that a claimant may appear at the hearing in two ways: in person or by video teleconferencing." Davidson v. Astrue, No. 08-CV-209, 2008 WL 4865584, at *10 (W.D. Wis. Nov. 6, 2008) (holding that ALJ's refusal to allow claimant to appear

telephonically was reasonable in light of federal regulations) (citing 20 C.F.R. §§ 416.1436, 416.1450). Still, the accommodation plaintiff requests is not unprecedented. See, e.g., Pauloo v. Soc. Sec. Admin., No. 05-CV-1134, 2008 WL 906365, at *3 (C.D. Cal. Mar. 28, 2008) (noting that plaintiff appeared telephonically at hearing); Coe v. Astrue, No. 07-CV-0500, 2008 WL 818948, at *17 (M.D. Pa. Mar. 25, 2008) (same); McManus v. Barnhart, No. 03-CV-800, 2004 WL 2212026, at *2 (D. Del. Sept. 27, 2004) (same). On remand, the parties shall seek to effect plaintiff's appearance in the manner prescribed by the regulations. However, given the prolixity of these proceedings and the manifest legal errors committed below, if Mr. Vicari's current condition prevents his physical appearance at any hearing, the Commissioner may elect, at his sole cost and expense, to arrange for plaintiff's appearance by video teleconferencing. Failing that, the ALJ is directed to take Mr. Vicari's testimony telephonically and accord it the same weight it would have been accorded if given in person.

Although the Court does not perceive bad faith in the actions of the Commissioner in the processing of Mr. Vicari's claim, the fact remains that the August 24, 2005 decision, which was authored with the benefit of multiple remand orders from the Appeals Council, contained fundamental errors of law and evinced a failure on the part of the presiding ALJ to consider the full medical evidence before him. While as a general matter, the decision to assign a case to a new ALJ on remand is left to the discretion of the Commissioner, Hartnett v. Apfel, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998) (citing Travis v. Sullivan, 985 F.2d 919, 924 (7th Cir. 1993)), under these circumstances, the Court elects to depart from the general rule. Because "a fresh look by another ALJ would be beneficial," the Court directs the Commissioner to assign a new ALJ on remand. Ortiz v. Chater, No. 95-CV-3126, 1997 WL 50217, at *3 n. 1 (E.D.N.Y. Jan. 30, 1997); see Sutherland, 322 F. Supp. 2d at 291-93

(collecting cases and directing assignment to a new ALJ where original ALJ failed to consider adequately all the medical evidence and showed hostility to the plaintiff); see also Kolodnay v. Schweiker, 680 F.2d 878, 879-80 (2d Cir. 1982) (directing assignment to new ALJ where original ALJ failed to consider the entire medical record); Taylor, 2008 WL 2437770, at *5 (ALJ's repeated errors of law warranted reassignment); Hartnett, 21 F. Supp. 2d at 223 (directing assignment to new ALJ where original ALJ mischaracterized the record and failed to consider the record with adequate care).

Finally, in light of the lengthy delay he has experienced as his claim has proceeded up and down the administrative ladder, Mr. Vicari requests that the Court set a 60-day time limit from the entry of judgment for the ALJ to render a decision. The Court recognizes that a significant amount of time has passed since Mr. Vicari first filed his claim and acknowledges the troubling nature of the delay he has experienced as he awaits a final decision. However, a time limit for final adjudication is not now appropriate. While the Second Circuit has permitted district courts to impose a time limit when a claimant has satisfied his burden of proof on the first four steps of the five-step sequential analysis because, at that point, "the disability has been shown, and the burden shifts to the Commissioner to prove that the claimant is capable of working," Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005) ("Butts II"), Mr. Vicari's claim stands in a different posture. As previously noted, plaintiff has not yet progressed beyond the fourth prong of the disability analysis and thus has not yet proved that he is, in fact, disabled. Absent such a showing, the imposition of a time limit would "ru[n] afoul of the Appropriations Clause [and] the doctrine of sovereign immunity" and cannot be granted. Tempesta v. Astrue, No. 08-CV-00003, 2009 WL 211362, at *10 (E.D.N.Y. Jan. 28, 2009) (citing Butts II, 416 F.3d at 105));

Wright v. Astrue, No. 06-CV-6014, 2008 WL 620733, at *4 (E.D.N.Y. Mar. 5, 2008) ("because [plaintiff] has not progressed to step five it is improper to impose a deadline"); see also Uffre v. Astrue, No. 06-CV7755, 2008 WL 1792436, at *8 (S.D.N.Y. Apr. 18, 2008). Nevertheless, Mr. Vicari's claim has now been outstanding for nearly ten years. "On remand, . . . the Court expects proceedings to be conducted and resolved expeditiously." Wright, 2008 WL 620733, at *4; Uffre, 2008 WL 1792436, at *8. To that end, the Commissioner is directed to arrange for the conduct of any necessary hearing on remand within 45 days of the date of this Memorandum and Order, unless plaintiff agrees to additional delay.

### III. CONCLUSION

For the foregoing reasons, Mr. Vicari's claim is remanded to a new ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
February 10, 2009

ERIC N. VITALIANO
United States District Judge